<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | **:** | |
| **ADVANCED SURGERY CENTER,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action No. 12-2715 (JLL)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **CONNECTICUT GENERAL LIFE,** | **:** | |
| **INSURANCE COMPANY, ET AL.,** | **:** | **REPORT AND RECOMMENDATION** |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

**I.   INTRODUCTION**

This matter comes before the Court on the plaintiffs' motion for remand to the Superior

Court of New Jersey, Law Division, Civil Part, Passaic County.  The Honorable Jose L. Linares

referred the matter to the Undersigned for Report and Recommendation.  Pursuant to Fed. R.

Civ. P. 78, the Court did not hold oral argument.  For the reasons set forth below, the

Undersigned respectfully recommends that the plaintiff's motion be denied.

**II.   BACKGROUND**

**A.   Factual Background**

Plaintiff Advanced Surgery Center provides ambulatory surgical services and is located in

Clifton, New Jersey.  (Compl. (attached to Notice of Removal) ¶¶ 2, 9, Jan. 12, 2012, ECF No.

1-2).  Defendant Connecticut General Life Insurance Company is a national health insurance

carrier doing business in New Jersey and located in Bloomfield, Connecticut.  (<u>Id.</u> ¶ 3.)

Defendant CIGNA Healthcare of New Jersey, Inc., is a health insurance carrier in Jersey City,

1

New Jersey.  (Id. ¶ 4.)  Advanced Surgery Center has allegedly provided necessary surgery to patients with health benefits plans or policies that are provided or administered by the defendants.  (Id. ¶¶ 1, 8.)  According to the Complaint, the defendants have wrongfully denied payment on the plaintiffs' claims and reimbursement to Advanced Surgery Center because it is not a proper type of provider.  (Id. ¶¶ 1, 8, 10)  The patients have assigned their denied claims to Advanced Surgery Center.  (Id. ¶¶ 1, 8–9.)

     **B.**    **Procedural History**

In an "unrelated matter," on December 9, 2011, a claims resolution manager employed by the defendants emailed a paralegal of the counsel for Advanced Surgery Center.  (Pl.'s Br. 3, 5, Ex. D, June 1, 2012, ECF No. 9.)  The claims resolution manger stated, in pertinent part, that "[i]f I understood your question you wanted the proper entity name to serve - its Connecticut General Life Insurance Company.  You can send it certified to my attention or serve through our NJ process server and thats CT Corp."  (Pl.'s Br. Ex. D.)

In present matter, on January 17, 2012, Advanced Surgery Center filed the Complaint in the Superior Court of New Jersey, Law Division, Civil Part, Passaic County, against Connecticut General Life Insurance Company and CIGNA Healthcare of New Jersey.  (Notice of Removal Ex. F, May 7, 2012, ECF No. 1-7.)

On February 2, 2012, Advanced Surgery Center personally served the managing agent of CIGNA Healthcare of New Jersey at its office in Jersey City, New Jersey.  (Notice of Removal ¶ 3, May 7, 2012, ECF No. 1.)  On the same day, Advanced Surgery Center personally served an employee of Connecticut General Life Insurance Company at its office in Bloomfield, Connecticut, namely, Donna Gaudet, the Incoming Legal Coordinator.  (Notice of Removal ¶ 3,

Ex. B; Pl.'s Br. Ex. C.)

On March 27, 2012, a series of emails crossed between a paralegal for counsel for Advanced Surgery Center and a claims resolution manager for defendants.  The paralegal advised the claims resolution manager that the time to answer had expired and attached the February 2, 2012 proof of service and the Complaint.  (Pl.'s Br. Ex. E.)  The claims resolution manager responded that she had forwarded the email to the defendants' in-house counsel and stated: "Thanks very much for not filing the dismissal...[sic]."  (Id.)  In a later email that same day, the claims resolution manager apologized for the "internal mix-up with this lawsuit" and stated, "[w]e have someone looking at this right away, can we please have a 15 day extension?"  (Pl.'s Br. Ex. F.)

On March 29, 2012, an attorney for Advanced Surgery Center emailed the defendants' counsel for the purpose of transmitting contact information and noted that the Complaint contained a notice to produce.  (Pl.'s Br. Ex. G.)  On March 30, 2012, the defendants' counsel emailed a response and wrote in pertinent part:

> Per our conversation, please see the attached stipulation to extend time to answer or otherwise respond.  If it meets your approval, please sign and send it back to me.  I will file it with the court along with our response.  Also per our conversation, I note that the agreed upon extension is not meant for removal purposes; the time to remove has expired in any event.

(Id.)  On April 5, 2012, a paralegal for Advanced Surgery Center forwarded to defendants' counsel a signed stipulation extending time to answer, move, or otherwise respond to the Complaint until May 7, 2012.  (Pl.'s Br. Ex. H.)  In pertinent part, the stipulation stated: "The parties acknowledge this Stipulation in no way extends Defendants' time to remove this action to federal court."  (Id.)  The stipulation was signed only by counsel for Advanced Surgery Center.

3

(Id.)  The stipulation was never filed.

On May 7, 2012, the defendants removed this action to the United States District Court, District of New Jersey.  The defendants ground their removal in federal question jurisdiction under ERISA or, alternatively, in diversity jurisdiction along with assertions that CIGNA Healthcare of New Jersey was fraudulently joined.  (Notice of Removal ¶¶ 10–26.)  The defendants stated in their notice of removal that Connecticut General Life Insurance Company was never properly served and therefore its thirty-day opportunity for removal had never begun. (Id. ¶ 37.)

Later on May 7, 2012, the defendants applied for a Clerk's extension of time to answer, move, or otherwise respond to the Complaint.  (Appl. & Proposed Order, May 7, 2012, ECF No. 3.)  The extension request asserted that the defendants' time to answer had not expired and that they had not waived any defenses.  (Id.)  The Clerk of the Court granted the extension. (Clerk's Text Order, May 9, 2012.)

On May 29, 2012, the defendants moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss, May 29, 2012, ECF No. 6.)

On June 1, 2012, Advanced Surgery Center filed the present motion to remand this action to the Superior Court of New Jersey, Civil Part, Law Division, Passaic County.  (Mot. to Remand, June 1, 2012, ECF No. 9.)  On July 2, 2012, the defendants filed their opposition to the motion.  (Opp'n Br., July 2, 2012, ECF No. 14.)  On July 9, 2012, Advanced Surgery Center filed its reply.  (Reply Br., July 9, 2012, ECF No. 15.)  On July 16, 2012, the defendants filed a letter requesting leave to file a sur-reply, contending that Advanced Surgery Center has raised a

new legal argument for the first time in its reply.  (Defs.' Letter, July, 16, 2012, ECF No. 17.)[1]

On July 17, 2012, Advanced Surgery Center filed a letter opposing the request for a sur-reply and

asking for permission to file a sur-sur-reply if the request is granted.  (Pl.'s Letter, July 17, 2012,

ECF No. 19.)  On July 18, 2012, the Court granted permission to file the sur-reply and permitted

Advanced Surgery Center to file a sur-sur-reply.  (Text Order, July 18, 2012, ECF No. 20.)  On

July 24, 2012, Advanced Surgery Center filed its sur-sur-reply.  (Pl.'s Letter, July 24, 2012, ECF

No. 23.)

## III.   DISCUSSION

As an initial matter, the Court notes that a decision to remand is dispositive.  In re U.S.

Healthcare, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a

dismissal order of a federal action for lack of subject matter jurisdiction where a parallel

proceeding is pending in the state court.")  Accordingly, the Undersigned makes the following

report and recommendation to the assigned United States District Judge, the Honorable Jose L.

Linares.

---

[1] On the same day, Advanced Surgery Center filed errata sheets regarding the tables of contents and authorities in its briefing materials.  (Notice of Errata, Jule 16, 2012, ECF No. 18.)

A.      Motion for Remand[2]

Title 28, Section 1441(a) of the United States Code permits a defendant to remove a civil action in state court to a federal court where the action could have been filed originally, that is, where the federal court has subject matter jurisdiction over the action. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Section 1446 outlines the procedures for removal, and Section 1447 outlines the procedures following removal. 28 U.S.C. §§ 1446, 1447. Defects in removal may be procedural or jurisdictional. Under 28 U.S.C. § 1446(b)(1), a defendant has thirty days to remove a case, and this time limit "is a procedural provision, not a jurisdictional one." Farina v. Nokia Inc., 625 F.3d 97, 114 (3d Cir. 2010) (citing Ariel Land Owners, Inc. v. Dring, 351 F.3d 611, 614 (3d Cir. 2003)). In turn, a plaintiff's "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." 28 U.S.C. § 1447(c). Jurisdictional defects, however, may be raised at any time. Caterpillar Inc. v. Lewis, 519 U.S. 61, 69 (1996).

Defendants bear the burden of demonstrating that removal was proper as they are the parties asserting federal jurisdiction. Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir.

---

[2] Although not raised by the parties, the Court notes that Congress recently passed the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011), which amended 28 U.S.C. § 1446, among others statutes. The law sought to "bring[] more clarity to the operation of Federal jurisdictional statutes and facilitate[] the identification of the appropriate State or Federal court where actions should be brought." H.R. 122-10, at 1–2 reprinted in 2011 U.S.C.C.A.N. 576, 577. Under Section 205, the Act took effect "upon the expiration of the 30-day period beginning on the date of [its] enactment." Pub. L. No. 112-63, § 205, 125 Stat. 758. § 205 H.R. 394, Pub. L. No. 112-61. As the President signed the bill into law on December 7, 2011, the Act took effect upon the expiration of January 6, 2012. Accordingly, the revised statute applies to this case.

6

2007); see also Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009) (describing burden as "heavy").

The removal statutes "are to be strictly construed against removal and all doubts should be

resolved in favor of remand."  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)

(citing Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir.1987)).

Here, the fundamental issue is whether there was a procedural defect in the notice of

removal, namely, whether the defendants' notice of removal was timely.

### B.      Removal's Thirty Day Time Limit

Title 28, Section 1446(b)(1) of the United States Code states that "[t]he notice of removal

of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant,

through service or otherwise, of a copy of the initial pleading setting forth the claim for relief

upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  The Supreme

Court has held that "a named defendant's time to remove is triggered by simultaneous service of

the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and

apart from service of the summons, but not by mere receipt of the complaint unattended by any

formal service."  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347–48

(1999).  The Court based this interpretation of Section 1446 "in light of a bedrock principle" that

"[a]n individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process."  Murphy, 526

U.S. at 347.  Accordingly, "the removal period for a defendant does not begin to run until that

defendant is properly served or until that defendant waives service."  Di Loreto v. Costigan, 351

F. App'x 747, 751 (3d Cir. 2009) (citing Murphy, 526 U.S. at 350.).  Whether a defendant has

waived service so as to trigger the removal period is a question of state law.  See Di Loreto, 351

7

F. App'x at 752 ("Since Costigan was never officially served in accordance with the
Pennsylvania Rules of Civil Procedure, we must determine when he waived service so as to
trigger his removal period.").  In addition, the Third Circuit has interpreted the words "initial
pleading" to mean the complaint.  See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 222–23 (3d
Cir. 2005).

> ### C.    Analysis

This motion requires the Court to consider three issues.  First, the Court must determine
whether Advanced Surgery Center properly served process on Connecticut General Life
Insurance Company.  Second, regardless of whether service was proper, the Court must
determine whether simultaneous receipt of the summons and complaint triggered the thirty-day
period for removal.  Third, the Court must consider whether service was nonetheless effected by
waiver, consent, or otherwise, thereby triggering the removal period.

> ### 1.    Whether Service of Process was Proper

It is undisputed that, if the February 2, 2012 service of process on Connecticut General
Life Insurance Company was effective, then its thirty day clock to remove began on that day.  See
28 U.S.C. § 1446(b)(1); Murphy Bros., 526 U.S. at 347–48.  Connecticut General Life Insurance
Company is a Connecticut corporation doing business in New Jersey and, pursuant to N.J. Stat.
Ann. 17B:23-2(c), has designated the New Jersey Department of Banking and Insurance as its
registered agent for service of process in New Jersey.  (See Compl. ¶ 3; Notice of Removal ¶¶ 17,
30–31.)  According to Advanced Surgery Center's affidavit of service, its service processor went
to the office of Connecticut General Life Insurance Company in Bloomfield, Connecticut, and

personally served a Donna Gaudet, who is the Incoming Legal Coordinator.  (Pl.'s Br. Ex C.)[3]

Connecticut General Life Insurance Company argues that, since it is a non-resident corporation, Advanced Surgery Center could have served its in-state registered agent and failed to make a diligent effort and inquiry before seeking to effect service outside the state.  (Notice of Removal ¶¶ 30–36; Opp'n Br. 5–9.).  Advanced Surgery Center argues that service is proper notwithstanding any "technical violation" of the New Jersey Court Rules.  (Reply Br. 4–6.) Specifically, it argues that propriety of service is governed by due process concerns and "inquiry as to proper service turns wholly upon whether due process has been afforded to the defendant by meeting the constitutional requirements set out by Justice Jackson in Mullane[ v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)]."  (Reply Br. 5.)  In this regard, Advanced Surgery Center looks to Rosa v. Araujo, 260 N.J. Super. 458 (App. Div. 1992), wherein a motion to vacate a default judgment was denied, notwithstanding defective service on an in-state defendant, because the defendant had received the summons and complaint and turned it over to his attorney before default judgment was entered.  Id. at 463.  Advanced Surgery Center contends that service was proper because Connecticut General Life Insurance Company "received the

_____

[3] The process server also indicated the box stating that he "[l]eft a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)."  (Pl.'s Br. Ex. C.)  Connecticut General Life Insurance Company's notice of removal attaches the declaration of Donna Gaudet who stated that she indeed "personally accepted in-hand service, on behalf of CGLIC, of the Summons and Complaint in the above-captioned matter at CGLIC's office in Bloomfield, Connecticut."  (Notice of Removal Ex. B.) No party has raised concerns that Ms. Gaudet was a person who was not authorized to receive service.  Notably, however, "New Jersey has adopted the federal rule 'that the plaintiff has the burden of showing that an alleged agent has specific authority, express or implied, for receipt of process.'"  Lee v. Genuardi's Family Markets, L.P., Civ. No. 10-1641, 2010 WL 2869454, at *4 (D.N.J. July 19, 2010) (quoting Zoning Bd. of Adjustment of Sparta Twp. v. Serv. Elec. Cable, 198 N.J. Super. 370, 377 (App. Div. 1985)).

9

summons and complaint, w[as] aware of the nature of the lawsuit, and had turned the matter over to an attorney who actively participated in the representation." (Reply Br. 6.)

Under New Jersey law, personal service is the primary method of effecting service. <u>See</u> N.J. Ct. R. 4:4-4(a), 4:4-5(a). New Jersey Court Rules 4:4-3 and 4:4-4(a) prescribe the methods of effecting personal service within the state. In pertinent part, New Jersey Court Rule 4:4-4(a)(6) describes how to serve a domestic corporation and states that service is made by personally serving a copy of the summons and complaint

- on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation,

- or on a person at the registered office of the corporation in charge thereof,

- or, if service cannot be made on any of those persons, then on a person at the principal place of business of the corporation in this State in charge thereof,

- or if there is no place of business in this State, then on any employee of the corporation within this State acting in the discharge of his or her duties, provided, however, that a foreign corporation may be served only as herein prescribed subject to due process of law

N.J. Ct. R. 4:4-4(a)(6) (bullet points added for clarity).

When personal service cannot be effected within the state, Rule 4:4-4(b) permits substituted or constructive service to obtain personal jurisdiction over a defendant. <u>See</u> N.J. Ct. R. 4:4-4(b). Rule 4:4-4(b)(1)(A) permits personal service in other states in the United States and the District Columbia "in the same manner as if service were made within this State." Substituted or constructive service, however, requires an affidavit demonstrating "diligent effort and inquiry" that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b). N.J. Ct. R. 4:4-4(b)(1) ("*By Mail or Personal Service Outside the State.* If it appears by affidavit

satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service

cannot be made in accordance with paragraph (a) of this rule, then, consistent with due process of

law, *in personam* jurisdiction may be obtained over any defendant as follows:").

The Appellate Division of the New Jersey Superior Court has stated that "[t]he filing of

an affidavit of inquiry is not a mere technicality—it is a mandatory jurisdictional requirement."

Burgos v. Int'l Vacation Club, Ltd., Docket No. L-1721-09, 2012 WL 787385, at *2 (N.J. Super.

Ct. App. Div. Mar. 13, 2012) (finding that the failure to file an affidavit of service was one of

"several fatal defects in service of process").[4]  "If a defendant cannot be personally served within

the State, in personam jurisdiction can only be obtained by mail or personal service outside the

State '[i]f it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent

effect and inquiry personal service cannot be made in accordance with [Rule 4:4-4(a)].'"  Burgos,

2012 WL 787385, at *2 (quoting N.J. Civ. R. 4:4-4(b)(1)) (alteration in Burgos).  Notably, the

failure to include an affidavit of diligent inquiry will not support a default or default judgment.

See, e.g., Mettle v. First Union Nat'l Bank, 279 F. Supp. 2d 598, 603–04 (D.N.J. 2003) (setting

aside default for failures to effect service, among which included failure to file affidavit of due

diligence); Burgos, 2012 WL 787385, at *2–3 (vacating default judgment, notwithstanding

defendant's actual notice of suit, because service defects, including failure to file affidavit of due

diligence, did not allow court to obtain in personam jurisdiction); Sobel v. Long Island Entm't

---

[4] "The purpose of the rule requiring an affidavit of diligent inquiry is to assure the court that it has personal jurisdiction to enter judgment and that the defendant's right to due process has not been violated."  Arianna Holding Co. v. Cummings, Docket No. F-31268-08, 2011 WL 2671805, at *3 (N.J. Super. Ct. App. Div. July 11, 2011) (Finding affidavit deficient and rejecting argument that due process and substituted service by mail were satisfied "if the facts later show that the defendant actually resided at the address to which process was mailed").

Prods., Inc., 329 N.J. Super. 285, 290–95 (App. Div. 2000) (same); Durham v. Ramada, Inn,

Docket Nos. L-8022-02, L-1312-05, 2007 WL 1649896, at *1 (N.J. Super. Ct. App. Div. June 8,

2007) (affirming decision to vacate default where service was improper for failing to file

affidavit of diligent inquiry).  This same failure can result in dismissal of a case for defective

service.  See, e.g., Chhaparwal, M.D. v. W. Va. Univ. Hosps., Inc., Civ. No. 07-3608, 2008 WL

1809392, at *2–4 (D.N.J. Apr. 22, 2008); Signs by Tomorrow-USA, Inc. v. G.W. Engel Co., Civ.

No. 05-4353, 2006 WL 2224416, at *3–5 (D.N.J. Aug. 1, 2006); Cf. Mettle, 279 F. Supp. 2d at

603–05 (considering dismissal for failure to serve but granting extension because of plaintiff's

pro se status).  Accordingly, the failure to file an affidavit of diligent inquiry is not a mere

technicality, but error that deprives a court of jurisdiction.[5]

      Thus, Advanced Surgery Center's service on Connecticut General Life Insurance

Company was defective.

### 2.       Whether Improper Service Triggers Thirty-Day Removal Period

      Advanced Surgery Center also contends that, regardless of the propriety of service, the

simultaneous receipt of the summons and complaint is all that is required to start the thirty-day

removal clock under the United States Supreme Court's decision in Murphy Brothers.  (Reply Br.

---

     [5] Advanced Surgery Center's extensive reliance on Rosa v. Araujo, 260 N.J. Super. 458
(App. Div. 1992), does not change this result.  Advanced Surgery Center's argument incorrectly
posits that due process, notice, service of process, and personal jurisdiction mean the same thing.
Actual notice may comport with due process, see Sobel, 329 N.J. Super. at 292–94, but
substantial deviations from the service of process rules will not guarantee that a court has
jurisdiction over a party.  Id. at 293–94.  Notwithstanding actual notice and sufficient time to
respond to a complaint, failure to comply with the rules of service may deprive a court of *in
personam* jurisdiction.  Id. at 294 ("The defendant had actual notice of the suit, but neither of the
methods of service which were used complied with the applicable rules for obtaining *in
personam* jurisdiction.").  As described above, Advanced Surgery Center's flaw in service was
such a fatal failure whereas in Rosa it was not.

at 7.)  In support, Advanced Surgery Center points to <u>Granovsky v. Pfizer, Inc.</u>, 631 F. Supp. 2d

554, 562 (D.N.J. 2009), and <u>MacDonald v. Township of Wall Police Department</u>, Civ. No. 11-

1598, 2011 WL 1740410, at *2 (D.N.J. May 4, 2011).  From these cases, Advanced Surgery

Centers argues that when the thirty-day removal clock begins is a federal inquiry "not triggered

by state service rules regarding personal jurisdiction" and that "it is simply the receipt of the

summons and complaint [that] triggers the 30-day removal clock, even if such service is not

'effective' under state law for purposes of obtaining personal jurisdiction."  (Reply Br. at 8.)

Contrary to these assertions, proper service and a court's acquisition of personal

jurisdiction were at the heart of the Supreme Court's decision in <u>Murphy Brothers</u>.  In that case, a

plaintiff faxed a complaint without a summons to a defendant and asserted that receipt of the

complaint was sufficient to start the removal clock.  <u>Murphy Bros.</u>, 526 U.S. at 348–49.  The

Eleventh Circuit Court of Appeals agreed, having adopted the plain meaning of the removal

statue, 28 U.S.C. § 1446(b)(1),[6] and finding that Congress had endorsed the "receipt rule," that is,

mere receipt of a complaint and not service was all that Section 1446(b) required.  <u>Michetti Pipe</u>

<u>Stringing, Inc. v. Murphy Bros., Inc.</u>, 125 F.3d 1396, 1398 (11th Cir. 1997) (considering

---

[6] 28 U.S.C. § 1446(b)(1) states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days
> after the receipt by the defendant, through service or otherwise, of a copy of the
> initial pleading setting forth the claim for relief upon which such action or
> proceeding is based, or within 30 days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and is not required to
> be served on the defendant, whichever period is shorter.

The recent amendments did not change this subsection substantively; Congress merely changed
the word "thirty" to the numeral "30".  <u>See</u> Federal Courts Jurisdiction and Venue Clarification
Act of 2011, Pub. L. No. 112-63, 125 Stat. 758 (Dec. 7, 2011).

"whether 28 U.S.C. § 1446(b) embodies a 'receipt rule' or a 'service of process rule'" and "[c]oncluding that the clock starts to tick upon the defendant's receipt of a copy of the filed initial pleading"); accord Murphy Bros., 526 U.S. at 353–54.

      The Supreme Court considered the plain meaning of Section 1446(b) and rejected it. See Murphy Bros., 526 U.S. at 353–56.  Instead, the Supreme Court "read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."  Murphy Bros., 526 U.S. at 347.  The Court found that Congress did not mean to upend a concept as fundamental as personal jurisdiction by allowing a court to take away a party's procedural rights before having authority over that party.  See Murphy Bros., 526 U.S. at 356 ("In sum, it would take a clearer statement than Congress has made to read its endeavor to extend removal time (by adding receipt of the complaint) to effect so strange a change—to set removal apart from all other responsive acts, to render removal the sole instance in which one's procedural rights slip away before service of a summons, i.e., before one is subject to any court's authority."); see also id. at 350 ("Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant. . . . In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

      Some debate persists, however, concerning the exact contours of the holding in Murphy Brothers, which was:  "[A] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint

14

unattended by any formal service." Id. at 347–48.  Relying on Granovsky and MacDonald,

Advanced Surgery Center interprets Murphy Brothers to mean that formal service requires solely

"the simultaneous receipt of the complaint and summons" and not "effective" service.

Granovsky, 631 F. Supp. 2d at 562; accord MacDonald, 2011 WL 1740410, at *2.  Under this

interpretation, the essential problem in Murphy Brothers was not that a court did not have

personal jurisdiction over a defendant when the plaintiff merely faxed the complaint, but that the

plaintiff failed to fax both the complaint *and the summons* at the same time.

　　　　However, the Court in Murphy Brothers expressed considerable concern regarding

personal jurisdiction.  The Court rejected the receipt rule and grounded its "entire analysis . . . in

the notion that it would be unfair to impose any kind of procedural imposition on a defendant

over whom the court did not yet have personal jurisdiction."  Bidlingmeyer v. Broadspire, Civ.

No. 11-6144, 2012 WL 2344862, at *3 (D.N.J. June 19, 2012).  The Court in part rejected the

"receipt rule" because application of that rule would allow a court to take away "one's procedural

rights . . . before one is subject to any court's authority."  Murphy Bros., 526 U.S. at 356.

Moreover, the Court in Murphy Brothers was concerned that the "receipt rule" could "operate

with notable unfairness to individuals and entities in foreign nations" by faxing the complaint

without proper service and thereby "plaintiffs 'would be able to dodge the requirements of

international treaties and trap foreign opponents into keeping their suits in state courts."  Id. at

346.

　　　　Similarly, Advanced Surgery Center's interpretation would allow plaintiffs to ignore New

Jersey Court Rules for service outside the state and either trap outside entities into state court or

force them to enter the ligation when no obligation to defend yet exists.  Cf. Wohlegmuth v. 560

15

Ocean Club, 302 N.J. Super. 306, 311 (App. Div. 1997) ("The rules, however, do not provide for

an affirmative duty on the part of a party who was improperly served to take any protective

action.").  Given the Supreme Court's rejection of the plain language of the removal statute and

the receipt rule, its emphasis on procedural rights and personal jurisdiction, and the implications

of the plaintiff's interpretation that upends all those concerns, the Undersigned concludes that

Murphy Brothers requires that service be proper enough to make a defendant subject to a court's

authority.  See Bidlingmeyer, 2012 WL 2344862, at *2 ("The Supreme Court's decision in

Murphy dictates that the removal clock does *not* begin to run until the defendant the plaintiff has

obtained personal jurisdiction over the defendant." (emphasis in original); id. at *3 ("The

'service' referenced in the holding, in the context of the entire opinion, can only be read to mean

perfected service sufficient to obtain personal jurisdiction over the defendant.").  This result

comports with the Third Circuit Court of Appeals' decision in Di Loreto, numerous other

decisions in this district, and legal commentary.[7]

---

[7] See, e.g., Di Loreto, 351 F. App'x at 751 (stating that "the removal period for a
defendant does not begin to run until that defendant is properly served or until that defendant
waives service" and considering Pennsylvania law to determine whether service was proper or
whether service was waived); Bidlingmeyer, 2012 WL 2344862, at *2–4; Cnty. of Morris v.
State Nat'l Ins. Co., Civ. No. 10-6616, 2011 WL 2039057, at *2–4 (D.N.J. Apr. 26, 2011), report
& recommendation adopted, 2011 WL 2036439 (D.N.J. May 22, 2011) (stating that "[t]he 30 day
removal period begins to run upon the effectuation of proper service of process" and that service
failures, including absence of affidavit of diligent inquiry, rendered service improper and failed
to trigger removal period); Ingersoll-Rand Co. v. Barnett, Civ. No. 05-636, 2005 WL 2175461, at
*5 (D.N.J. Sept. 7, 2005) (service was improper because of failure to comply with affidavit of
due diligence requirement and therefore "the thirty-day removal period was not triggered");
Uriarte v. Outback Steakhouse, Civ. No. 11-897, 2011 WL 4020953, at *7–8 (D.N.J. Sept. 8,
2011) (considering propriety of service to determine removal start date); Lee, 2010 WL 2869454,
at *1 (D.N.J. July , 19, 2010) (finding that defective service did not trigger removal period);
Pegasus Blue Star Fund, LLC v. Canton Prods., Inc., Civ. No. 08-1533, 2009 WL 331413, at *1
(D.N.J. Feb. 10, 2009) (finding that "the § 1446(b) clock had never started" because defendant
(continued...)

Advanced Surgery Center's other legal contentions are also unavailing.  Its argument that this Court should ignore state law for service of process was rejected by the Supreme Court.  <u>See</u> <u>Murphy Bros.</u>, 526 U.S. at 351–54 (relying upon differing outcomes under state service provisions as part of its reasoning); <u>accord</u> <u>DiLoreto</u>, 351 F. App'x at 752; <u>Uriarte</u>, 2011 WL 4020953, at *7; 14C Wright & Miller, <u>supra</u> § 3731.

Similarly, Advanced Surgery Center's reliance on <u>Tucci v. Hartford Financial Services Group, Inc.</u>, 600 F. Supp. 2d 630 (D.N.J. 2009) is misplaced.  In <u>Tucci</u>, the Court considered whether service on a statutory agent triggered the removal period given Congress's concern that a defendant have "adequate time."  <u>Id.</u> at 632–35.  Relatedly, the Supreme Court recognized in <u>Murphy Brothers</u> that the implication of differing state service procedures might result in removal periods longer than thirty days from service.  <u>Murphy Brothers</u>, 526 U.S. at 354 (considering various categories of state service provisions and stating that "[i]n each of the four categories, the defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received").  <u>Tucci</u> simply adopted a rule consistent with these concerns, and consistent with the

---

[7](...continued)
"had not received formal service of process at the time of filing"); <u>Alicea v. Outback Steakhouse</u>, Civ. No. 10-4702, 2011 WL 1675036, at *3–4 (D.N.J. May 3, 2011) <u>report & recommendation adopted</u> 2011 WL 2444235 (D.N.J. June 9, 2011) (stating that the "thirty-day removal period begins to run when proper service is effectuated"); <u>see also</u> 14C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u>, § 3731 (4th ed. 2012) ("However, given the Supreme Court's rejection of the Fifth and Seventh Circuit's decisions regarding the triggering mechanisms for the removal period, state law governing formal service of process must now be followed to protect defendant's interests. . . . Thus, earlier cases holding that the plaintiff gives the notice called for by the statute when the plaintiff makes a bona fide effort to serve the defendants with the complaints or summons, and implying that informal of flawed service could satisfy the statutory notice requirement, no longer are good law.").

17

conclusions by many other courts, that defendants have the full statutorily permitted time for review.  See Tucci 600 F. Supp. 2d. at 632–33 n.3 (collecting cases).  Any consistency between Tucci and the plaintiff's position is illusory.  Tucci does address personal jurisdiction issues and does not stand for the proposition that simultaneous receipt of the summons and complaint are the only determinative considerations for compliance with the removal clock.  Cf. id. at 634 (finding that Murphy Brothers' rejection of receipt rule "does not mean, however, that the opposite is true - that formal service negates the requirement that defendant actually receive the papers that are served").  Rather, Tucci's interpretation of Murphy Brothers is best read as a concern, assuming that a court has personal jurisdiction over a defendant, that the same defendant have adequate time to consider removal.  As the concerns here are jurisdictional and not notice, Tucci is inapposite.

Accordingly, improper service that fails to give a court personal jurisdiction over a defendant will not trigger the time for removal.  As discussed above, Advanced Surgery Center's defective service was an error that would deprive a court of personal jurisdiction and thereby failed to start the thirty day clock for removal.

### 3.    Whether Service was Effected by Waiver, Consent, or Otherwise

Given that defective service of process did not start the removal clock, the Undersigned considers whether the clock was nevertheless started since the removal period for a defendant may begin to run where "that defendant waives service."  Di Loreto, 351 F. App'x at 751. Whether by consent, waiver, or otherwise, Advanced Surgery Center offers four arguments that service was nevertheless effected and that the defendants' removal clock was started.  (Pl.'s Br. 2.)  The Undersigned addresses each in turn.

18

          i.        **Waiver**

First, Advanced Surgery Center argues that the defendants waived objections to proper

service.  As a factual recap: Advanced Surgery attempted service on February 2, 2012; the

defendants removed on May 7, 2012; and the defendants filed the motion to dismiss on May 29,

2012.  Advanced Surgery Center argues that the defendants' failure to raise improper service of

process in the May 29, 2012 motion to dismiss waived — retroactively — the prior assertion of

improper service in defendants' May 7, 2012 Notice of Removal.  (Pl.'s Br. 2, 7–8.)  Advanced

Surgery Center also argues that this waiver also made service proper as of the date it improperly

served the defendants–*i.e.*, February 2, 2012.  (Id. at 2, 8.)

Advanced Surgery Center offers no case law for this argument.  Waiver is triggered on

the date it occurs.  For example, when a party enters an appearance "under Rule 4:4-6, that

waiver takes effect after a defendant waives service, not when the defendant first received the

improper service."  Alicea, 2011 WL 1675036, at *3.  Stated otherwise, the effective date of

service is the date when the party commits the act of waiver.  See, e.g., id. at *4 ("Defendants did

not waive or accept service until August 24, 2010.  Thus, August 24, 2010 is the date Defendants

were formally served with process in this case."); Staskewicz v. Harrington Corp., Civ. No. 10-

3361, 2011 WL 976498, at *2 (D.N.J. Mar. 14, 2011) ("As previously stated, under New Jersey

Court Rule 4:4-6, service is proper when the receiving party executes an acknowledgment of

service.  Plaintiff mailed Defendants' counsel a courtesy copy of the Complaint and the

Acknowledgment of Service on February 17, 2010.  Defendants executed the Acknowledgment

of Service on June 10, 2010.  Thus, service was proper as of June 10, 2010."); Marina Bay

Towers Urban Renewal II, L.P. v. City of North Wildwood, Civ. No. 09-369, 2009 WL 2147356,

at *1 n.3 (D.N.J. July 14, 2009) ("[A]lthough it appears that plaintiff has never formally served the City, the City's appearance at the injunction hearing on December 18, 2008 may constitute a waiver of service under state law, and if so construed, the City's removal on January 27, 2009 may have been improper."); Joshi v. K-Mart Corp., Civ. No. 06-5448, 2007 WL 2814599, at *3 (D.N.J. Sept. 25, 2007) ("Although Defendant's counsel was faxed a courtesy copy of the Complaint on October 12, service was not proper pursuant to Rule 4:4-6 until the Acknowledgment of Service was executed on October 16.").  Incidentally, waiver did not occur when the notice of removal was filed as "[a] party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections." 5C Wright & Miller, supra, § 1395.

Here, any waiver by the defense occurred on the day the motion to dismiss was filed, not before it.  When Connecticut General Life Insurance Company filed the notice of removal on May 7, 2012, it did not trigger a waiver.  See id..  Waiver may very well have occurred, however, on May 29, 2012, when the motion to dismiss did not contest service.  See Fed. R. Civ. P. 12(h); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-05 (1982) (discussing framework for waiver of personal jurisdiction and noting that failure to raise timely objection under Fed. R. Civ. P. 12(h)(1) constitutes waiver).  Such waiver may constitute submission to this Court's jurisdiction on May 29, 2012.  But that waiver and submission to jurisdiction does not have retroactive effect, nor does it make the plaintiff's improper service proper.

Accordingly, the Undersigned rejects Advanced Surgery Center's argument that waiver made the notice of removal untimely.

ii.     **Estoppel**

Second, Advanced Surgery Center contends that the defendants' representations equitably estop them from denying that service was proper.  (Pl.'s Br. 2.)  Specifically, Advanced Surgery Center contends that it did not take further action in the state court proceedings because the defendants' counsel expressly stated that the time to remove had expired and asked that it sign a stipulation to extend time to answer.  (Id. at 3.)  Advanced Surgery Center argues that it was deceived into forbearing further action by the defense counsel's misrepresentations and that the Court should not reward counsel's misconduct.  (Id.)

For their part, the defendants assert that defense counsel did not know the facts of service, were under the mistaken belief that service had been effected properly, and learned otherwise later.  (Opp'n Br. 14.)  The defendants also argue that Advanced Surgery Center did not detrimentally rely on the defendants' conduct and have offered no specific explanation of how it so relied.  (Id.)  Further, the defendants contend that it was Advanced Surgery Center's improper service that caused the confusion to begin with, which precludes any assertion of collateral estoppel.  (Id.)

As the New Jersey Supreme Court has stated: "Estoppel is an equitable doctrine founded in the fundamental duty of fair dealing imposed by law."  Knorr v. Smeal, 178 N.J. 169, 178 (2003) (quoting Casamasino v. City of Jersey City, 158 N.J. 333, 354 (1999)).  The purpose of estoppel is "to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment."  Knorr, 178 N.J. at 178 (citing Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510 (App.Div.1955)).  Courts apply equitable estoppel "only in very compelling circumstances, where the interests of justice, morality and common

21

fairness clearly dictate that course." Phillips v. Borough of Keyport, 107 F.3d 164, 182 (3d Cir.

1997) (quoting Palatine I v. Planning Bd. of Twp. of Montville, 133 N.J. 546, 560 (1993))

(internal quotation marks omitted).  The party asserting collateral estoppel has the burden of

proof and

> must show that the alleged conduct was done, or representation was made,
> intentionally or under such circumstances that it was both natural and probable
> that it would induce action.  Further, the conduct must be relied on, and the
> relying party must act so as to change his or her position to his or her detriment.

Phillips, 107 F.3d at 182 (quoting Miller v. Miller, 97 N.J. 154, 163 (1984)); see also Knorr, 178

N.J. at 178 ("In short, to establish equitable estoppel, plaintiffs must show that defendant

engaged in conduct, either intentionally or under circumstances that induced reliance, and that

plaintiffs acted or changed their position to their detriment.") (citing Miller, 97 N.J. at 163); C.R.

v. J.G., 306 N.J. Super. 214, 235 (Ch. Ct.1997) ("Equitable estoppel requires misrepresentation

of material facts or concealment thereof, known to the party sought to be estopped and unknown

to the party claiming estoppel, done with the intention or expectation that it will be acted upon by

the other party and upon which the other party reasonably and justifiably relies to its detriment.").

"A prerequisite of equitable estoppel is that such reliance be in good faith." Phillips, 107 F.3d at

182 (internal quotation marks and citations omitted).  Similarly, a party "may not base a claim of

estoppel in his favor on his own wrongful acts, or dereliction of duty, or on acts of [the other

party] influenced by his conduct." C.R. v. J.G., 306 N.J. Super. at 236.

The record before the Court does not justify the application of equitable estoppel.  First,

the present predicament began when Advanced Surgery Center erred in attempting service of

process.  While this error does not constitute "wrongful acts" or a "dereliction of duty," see C.R.

306 N.J. Super. at 236, Connecticut General Life Insurance Company acted in response to Advanced Surgery Center's mistaken assertions that process had been effected.  More specifically, a paralegal for counsel for Advanced Surgery Center emailed a claims resolution manager for Connecticut General Life Insurance Company and advised that the time to answer had expired.  (Pl.'s Br. Ex. E.)  This assertion prompted Connecticut General Life Insurance to act where, as discussed above, it had no obligation to act.  Even if this error does not preclude consideration of equitable estoppel, any injury to Advanced Surgery Center is at least partly self-inflicted, and this undercuts any demonstration that "very compelling circumstances" are present such that "the interests of justice, morality and common fairness clearly dictate" granting the relief sought here.  Phillips, 107 F.3d at 182; C.f. Gen. Accident Insur. Co. v. N.Y. Marine & Gen. Insur. Co., 320 N.J. Super. 546, 557 (App. Div. 1999) ("We conclude that where the dispute involves two insurance carriers, the failure of one carrier to keep the other carrier advised of the progress of the suit, and even the failure to engage an economic expert where, perhaps, one should have been engaged, is not a compelling circumstance calling for the invocation of the doctrine of equitable estoppel.").

Furthermore, Advanced Surgery Center has failed to demonstrate its harm.  Advanced Surgery Center has the burden of proof to show that it changed its position to its detriment.  It states that it "did not take further action in the state court proceeding," (Pl.'s Br. 3), that it "could have filed for default" (Id. at 9), and that it "relied upon Defendant's express and implied conduct to its detriment by not proceeding in state court and not seeking a default judgment." (Reply Br. 11.)  A default or even a default judgment, however, would have been completely unenforceable against Connecticut General Life Insurance Company because, as noted above, the

service failure here would have deprived a court of personal jurisdiction.  See Sobel, 329 N.J. Super. at 294–95; Durham, 2007 WL 1649896, at *1; Mettle, 279 F. Supp. 2d at 602–03.  Given the improper service and the standard for considering default and default judgment, any victory through an entry of default or default judgment likely would been short-lived.   See US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) ("When nothing more than an entry of default pursuant to Rule 4:43–1 has occurred, relief from that default may be granted on a showing of good cause."); Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964), aff'd, 43 N.J. 508 (1964) (applications to vacate default judgment "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached").  Of course, this line of reasoning is merely conjectural as it presumes what Advanced Surgery Center might have done and what it might have gained rather than what it actually did and actually lost.  But it is this unspecific and conjectural nature of Advanced Surgery Center's harm that makes its harm merely hypothetical.  In other applications of estoppel, parties have been able to point to more concrete injuries such as loss of employment, loss of tenured positions and pension benefits, extensive reliance litigating case, or an already obtained judgment.  See Barone v. Leukemia Soc'y of Am., 42 F. Supp. 2d 452, 464 (D.N.J. 1998) (employer waited until after leave expired to inform employee of need to return to work in order to fire her); Miller v. Bd. of Trustees, 179 N.J. Super. 473, 479 (App. Div. 1981) (petitioners lost tenured positions and pension benefits); Hernandez v. Stella, 359 N.J.Super. 415, 416–19 (App. Div. 2003) (parties engaged in discovery; fourteen months after filing answer, seven months after the statute of limitations had run plaintiff's claim, and three months after arbitration, defendants moved for summary judgment on ground that plaintiff failed to provide physician's certification required in automobile case);

24

Wohlegmuth, 302 N.J. Super. at 311–314 (defendant knew of default judgment for six years and took no action to vacate notwithstanding allegations of improper service). Here, however, the possibility that Advanced Surgery Center not only would have sought default judgment, but actually would have obtained it, is far too remote to find detrimental reliance.

But there are additional reasons why Advanced Surgery Center's claim of detriment is insufficient. Estoppel is supposed to "prevent the inequitable assertion or enforcement of claims or rights which might have existed," Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 67 (App. Div. 2000), and this implies a corresponding relationship between the inequitable conduct and the lost rights or claims. Advanced Surgery Center claims it lost the entry of default (or default judgment), but here it seeks something else: it seeks instead to block removal. Acquisition of a default or default judgment, however, is not ostensibly related to whether the defendants can remove. Neither default nor default judgment extinguishes a defendant's removal rights. See Sawyer v. USAA Insur. Co., Civ. No. 11-0523, 839 F. Supp. 2d 1189, 1212–13 (D.N.M. Mar. 8, 2012) (collecting cases); Hawes v. Cart Products, Inc.,386 F. Supp. 2d 681, 686 (D.S.C. Apr. 2005) (collecting cases). Thus, even if there was a default or default judgment, Connecticut General Life Insurance Company could have still removed the case to federal court based on its theory of improper service. Relatedly, the agreed upon stipulation, if it could be enforced, would not change this result as it only precludes the extension of a removal period that, as explained above, never started.[8] Accordingly, even if Advanced Surgery Center had gotten what it alleges

---

[8] Moreover, any suggestion that the parties could extend the removal period is mistaken. Congress's grant of statutory jurisdiction does not permit such an extension. As this Court has noted,

(continued...)

it lost, the parties could still be before this Court through removal.

Liberally read, Advanced Surgery Center also implicitly asserts that there was a *quid pro quo* in which the plaintiffs admitted "that the removal clock had run and stipulating the same in exchange for the right to file an answer out of time."  (Reply Br. 3; <u>see also</u> Pl.'s Br. 10 ("Furthermore, outside counsel explicitly stated that the time to remove had passed.  Language to that effect was purposefully included in the stipulation that CGLIC drafted and had Plaintiff sign.").)[9]  The record before the Court indicates that defense counsel emailed the plaintiff counsel and wrote that:

> Per our conversation, please see the attached stipulation to extend time to answer or otherwise respond.  If it meets your approval, please sign and send it back to me.  I will file it with the court along with our response.  Also per our conversation, I note that the agreed upon extension is not meant for removal purposes; the time to remove has expired in any event.

(Pl.'s Br. Ex. G.)  In pertinent part, the stipulation stated: "The parties acknowledge this Stipulation in no way extends Defendants' time to remove this action to federal court."  (<u>Id.</u>)

---

[8](...continued)
[I]t is well-established that, "[w]here the right of removal has been lost by failure to file a petition within the statutory period, it cannot be restored by order of the court or by stipulation of the parties.  The statutory period is an inflexible rule of law determining the time within which an application to remove must be made, and the court has no discretionary power to enlarge this period."

<u>THS Co., LLC v. Sheraton World Resort Orlando</u>, Civ. No 06-4956, 2006 WL 3731205, at *2 (D.N.J. Dec. 18, 2006) (quoting <u>Peter Holding Co. v. LeRoy Foods</u>, Inc., 107 F. Supp. 56, 57–68 (D.N.J.1952)); <u>see also</u> 14B Wright & Miller, <u>supra</u>, § 3721 ("The right to remove a case from a state to a federal court is purely statutory and its scope and terms of its availability therefore are entirely dependent on acts of Congress.").  Thus, to the extent that the plaintiffs assert there was a *quid pro quo* in this case, there was little or no value to the proposed stipulation.

[9] The Undersigned calls this an implicit argument because the plaintiff does not use the *quid pro quo* language in its argument collateral estoppel, and some of the quoted assertion are located in section other than the one requesting collateral estoppel.

Based on these two bits of information, it is unclear whether the removal provision was an actual exchange of rights or whether defense counsel's statement was incidental. From this information, counsel for both parties make contrary assertions as to what they knew, understood, and said to each other. No one, however, made any of these assertions in a certification, declaration, or affidavit. Various concessions in the briefs or parts of the record could support either view. For example, the attached emails, which were submitted without a proper certification but the validity of which no one contests, could support the possibility of mistake rather than an intent to deceive. (See Pl.'s Br. Ex. F. (claims resolution representative of Connecticut General Life Insurance Company: "I am sorry we had an internal mix-up with this lawsuit. . . . We have someone looking at this right away, can we please have a 15 day extension?"). However, it also appears beyond dispute that Advanced Surgery Center's counsel "was adamant that [the stipulation] would not extend the time for Defendants to remove the case to federal court." (Opp'n Br. 3.) But there is no basis in the record for the Undersigned to credit either Advanced Surgery Center's position (defense counsel committed deceit) or Connecticut General Life Insurance Company's position (defense counsel mistakenly believed service was proper). (See Pl.'s Br. 10; Defs.' Br. 14.) The Undersigned declines the invitation of both parties to use the briefs without more to make findings as to what particular counsel knew, understood, and said to each other. It is Advanced Surgery Center's burden to prove equitable estoppel, and the present record is insufficient to demonstrate that it should apply.

In sum, "[e]quity regards that as done which ought to be done," Wohlegmuth, 302 N.J. Super. at 312, but it far from clear that equity demands what Advanced Surgery Center asks. Accordingly, its second argument also fails.

27

### iii.      Acceptance of Service/General Appearance

Third, Advanced Surgery Center asserts that the defense counsel's email representations amount to either a general appearance or an acceptance of service pursuant to New Jersey Court Rule 4:4-6.  (Pl.'s Br. 2–3, 11–12.)  To be clear, there is no assertion that defense counsel signed an acceptance of the service of summons.  Nor is there any assertion that the counsel for Connecticut General Life Insurance came before any court or submitted any document before its Notice of Removal.  Advanced Surgery Center's argument is that defense counsel's non-court conduct constitutes a general appearance under New Jersey Court Rule 4:4-6.

New Jersey Court Rule 4:4-6 states that "[a] general appearance or an acceptance of the service of a summons, signed by the defendant's attorney or signed and acknowledged by the defendant (other than an infant or mentally incapacitated person), shall have the same effect as if the defendant had been properly served."  Courts in New Jersey have not interpreted this rule to mean that a party could take no action before a New Jersey court — submit no document, request no relief, come to no hearing — and nevertheless be deemed to make a general appearance before that court.  Rather, state and federal courts applying the rule have tacked closely to its plain terms and have refrained from defining "general appearance" expansively.  For example, in <u>Allen v. Du Mont Laboratories, Inc. v. Marcalus Manufacturing Co.</u>, 30 N.J. 290 (1959), the parties filed a stipulation to extend the defendant's time to answer or otherwise proceed, and the New Jersey Supreme Court held that the stipulation did not constitute a general appearance and noted that Rule 4:4-6 merely "provides methods whereby a defendant may voluntarily submit to the jurisdiction of a court in lieu of the service of process."  <u>Id.</u> at 301–03.  Consistent with <u>Allen</u>,

other courts applying Rule 4:4-6 have construed general appearance narrowly.[10]

Advanced Surgery Center's reliance on Field v. Field, 31 N.J. Super. 139 (App. Div. 1954), is misplaced.  Advanced Surgery Center culled the following selection from a block quote: "A general appearance may arise by implication from the defendant's seeking, taking or agreeing to take some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff, other than one to contest the jurisdiction only."  Field, 31 N.J. Super. at 148 (quoting "3 Am. Jur., Appearances, s 3, p. 783" (date unknown)).[11]  To begin with, Fields did not adopt this passage to expand the meaning to Rule 4:4-6, but merely to expound upon the general "principles" of appearance.  See Field, 31 N.J. Super at 148.  Importantly, Field's broader discussion paid explicit deference to the New Jersey Rules of Court as controlling and modifying

---

[10] See, e.g., Days Inn Worldwide, Inc. v. Buja Investments, Inc., Civ. No. 11-355, 2012 WL 194397, at *3 (D.N.J. Jan. 20, 2012) (finding that defendant's letter to plaintiff's counsel and carbon copied to the court did not waive service under Rule 4:4–6 even though he acknowledges that he had received the "lawsuit file"); Lewis v. Brown, Civ. No. 04-6063, 2010 WL 1371939, at *9 n. 11 (D.N.J. Mar. 30, 2010) (noting that consent order by defendant to correct amend the complaint to correct his name would have constituted general appearance pursuant to Rule 4:4-6) Marina Bay Towers, 2009 WL 2147356, at *1 n.3 (appearance at preliminary injunction hearing may constitute general appearance under Rule 4:4–6); Epos, Inc. v. Pantelopoulos, 2009 WL 4251122, at *2 (N.J. Super. Ct. App. Div. Dec. 1, 2009) (pro hac vice application did not constitute general appearance under Rule 4:4-6); Hill v. Warner, Berman & Spitz, P.A., 197 N.J. Super. 152, 167 (App. Div. 1984) (general appearance occurred under Rule 4:4-6 where stipulation specifically waived service and alternatively because of party's presence during trial without objection to service); Dion v. Gicking, 43 N.J. Super. 507, 510–12 (App. Div. 1957) (defendant did not make a general appearance under Rule 4:4-6 when he raised improper service defense but engaged in pretrial discovery activity: filing interrogatories, moving to dismiss for failure to answer those interrogatories, and moving to compel a physical examination); Fiorino v. Fiorino, 35 N.J. Super. 463, 469 (Junvenile & Domestic Relation Ct. 1955) (general appearance under Rule 4:4-6 when the defendant appeared at hearing with attorney and failed to contest personal jurisdiction).

[11] A more recent version of this passage can found at 4 Am. Jur. 2d Appearances § 1 (2012).

any principles of appearance.  Field, 31 N.J. Super. at 148–149.  Indeed, the New Jersey Supreme

Court noted that its Court Rules "adopt another approach."  Allen, 30 N.J. at 301.  Furthermore,

Advanced Surgery Center points to no New Jersey case that has actually adopted such an

expansive view of Rule 4:4-6.  Cf. supra note 4.  Moreover, the procedural facts of Field are

radically different and wholly inapplicable: a *quasi-in-rem* marital proceeding transformed to *in

personam* because an absentee defendant petitioned the court to vacate a judgment against him

without challenging personal jurisdiction and thereby made a general appearance.  Field, 31 N.J.

Super. at 143–44, 146, 147–150.  Lastly, were the Undersigned to construe this passage as

Advanced Surgery Center suggests, plaintiff's interpretation essentially would advance an

argument for estoppel, which the Undersigned has already rejected above as insufficient upon the

present record.

Under New Jersey Court Rule 4:4-6, Connecticut General Life Insurance Company has

made no appearance.  Before the Notice of Removal, no document was submitted to the Court.  It

neither signed an acknowledge of service nor made a general appearance before any court merely

by its communications with the plaintiff's counsel.  Moreover, even if the stipulation to extend

time had been filed, this act would not have constituted a general appearance as there was no

waiver of any defenses.  See Allen, 30 N.J. 290 at 302 ("A stipulation extending its time 'to

answer or otherwise proceed herein' does not suggest a purpose to abandon an objection which

under the rules can be raised by answer or motion before answer.  There is no reason to impose a

consequence the parties to the stipulation did not intend.").  And to the extent Advanced Surgery

Center reiterates its arguments for collateral estoppel, application of Rule 4:4-6 changes nothing

to the rejection of collateral estoppel discussed above.  Finally, the statement in this stipulation

that it did not extend the time to remove has no effect because the time to remove was never triggered.

Accordingly, the Undersigned also rejects Advanced Surgery Center's third argument.

### iv.    Consent

Fourth, Advanced Surgery Center states that Connecticut General Life Insurance Company had consented to an alternative form of service.  (Pl.'s Br. 13.)  Counsel for Advanced Surgery Center had contacted Connecticut General Life Insurance Company in an unrelated matter.  Regarding this unrelated matter, the representative from Connecticut General Life Insurance Company stated in an email that service could be directed to her personally via certified mail or through "CT corp."  (Pl.'s Br. Ex. D.)  In the present case, Advanced Surgery Center attempted service by a different means than instructed in the email, namely, personal service on a different person altogether.  Advanced Surgery Center argues that, because Connecticut General Life Insurance did not explicitly limit its consent to service in the unrelated matter, Advanced Surgery Center was entitled to effect service on Connecticut General Life Insurance in the different matter it chose.  (Pl.'s Br. 3, 5.)

This argument defies logic.  To extent there was any waiver to service in the unrelated matter, that waiver is restricted to that unrelated matter and not this one.[12]  And even if that waiver did extend to this case — which it does not — service must conform to the parameters set forth by that waiver, not beyond it.  Advanced Surgery Center's argument recognizes neither of

---

[12] The defendants argue that the email was not a consent to service, even in the case it was addressing.  (Defs.' Br. 15.)  The Undersigned takes no position on that issue and notes that it is not before him.  The analysis above merely assumes consent for the sake of argument to explain its lack of merit.

these limits of waiver.  Were one to follow Advanced Surgery Center's argument to its logical

conclusion, this email entitles its counsel to effect service in any alternative form and in any

future action against Connecticut General Life Insurance Company.  The Court rejects that

argument.

### D.     Fees

For the reasons above, the Undersigned finds that the defendants' removal was

procedurally proper.  Accordingly, there is no basis for awarding fees to Advanced Surgery

Center.

## IV.   Conclusion

For the reasons stated above, it is respectfully recommended that the Court deny the

motion to remand.


                                                               **s/*Michael A. Hammer*                                 **
                                                               **UNITED STATES MAGISTRATE JUDGE**

Date: July 31, 2012